# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 577 (92CR83) | **DATE** | 2/12/2002 |
| **CASE TITLE** | Roscoe Williams vs. United States of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, Roscoe Williams' petition for a writ of habeas corpus [1-1] pursuant to 28 U.S.C. Section 2255 is denied. This is a final and appealable order. This case is terminated. It is so ordered.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | **FEB 14 2002** | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 35 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TSA | courtroom deputy's initials | 02 FEB 13 PM 3:14 Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

Minute Order Form (06/97)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROSCOE WILLIAMS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> ) <br> Defendant. | Case No. 97 C 577 (92 CR 83) <br><br> Judge Wayne R. Andersen |

DOCKETED
FEB 1 4 2002

## MEMORANDUM, OPINION AND ORDER

Following a jury trial in the United States District Court for the Northern District of Illinois, Roscoe Williams was convicted and sentenced to fifteen years imprisonment for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). This matter is before the Court on the petition for a writ of habeas corpus filed by petitioner Williams to vacate, set aside or correct his sentence in *United States v. Williams*, 92 CR 83, pursuant to 28 U.S.C. § 2255. For the following reasons, the petition for habeas corpus is denied.

## BACKGROUND

On the evening of September 6, 1990, two unmarked police cars arrived at the Ida B. Wells Public Housing Complex in Chicago, Illinois. Two plain-clothed police officers emerged from one car and three more officers emerged from a second car. The police officers were investigating complaints of narcotics trafficking at the housing complex.

When the police officers arrived, Williams was leaning against a chain-link fence. When two of the officers exited their car, Williams stood up and began walking toward them. He then turned around and walked toward the other three officers who had gotten out of their car.

2 5

Looking over his shoulder at the two officers walking toward him, Williams began to trot. When he reached the end of the chain-link fence bordering the sidewalk, Williams began running across an empty lot. One of the police officers identified himself and shouted for Williams to stop. Williams ignored this order and continued running through the vacant lot. Three of the officers then saw Williams reach into the waistband of his trousers with his right hand, pull out a gun, and toss it away as he was running. One of the officers retrieved a loaded .357 caliber Sterm Rugar magnum revolver from a dirt path. The other officers, again announcing they were police officers and calling for him to stop, continued to chase Williams. These officers soon caught Williams in a fence-enclosed backyard and arrested him.

On February 4, 1992, a federal grand jury returned a single-count indictment against Williams charging him with being a felon in unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). During a two-day trial, the jury heard the testimony of three officers who witnessed Williams in possession of the gun. Also, an agent of the Department of Alcohol, Tobacco and Firearms ("ATF") who prepared a report on the case testified against Williams. The jury subsequently found Williams guilty. Based on his four prior felony convictions, Williams received the statutory minimum term of fifteen years imprisonment pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e). Williams then appealed his conviction to the United States Court of Appeals for the Seventh Circuit. The court affirmed Williams' conviction. In so doing, the Seventh Circuit rejected Williams' arguments that there was insufficient evidence to convict him and that this Court erred in giving a flight instruction to the jury. *United States v. Williams*, 33 F.3d 876 (7th Cir. 1994), *cert. denied*, 514 U.S. 1028 (1995).

In 1997 and 1998, Williams petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Williams alleged that he received ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. In particular, he contends that his trial lawyers were ineffective for failing to: 1) contest the propriety of this Court's jurisdiction since the gun he was convicted of possessing purportedly had minimal ties to interstate commerce; 2) call various witnesses to testify on his behalf; 3) call Leona Seay and Shavell Martin as defense witnesses; 4) allow the defendant to testify in his own defense at trial; 5) object to the case agent sitting at counsel's table; 6) obtain various discovery material before trial; 7) conduct a rigorous investigation of the scene of arrest; 8) challenge the underlying felony convictions that made Williams a career offender; 9) demand the discharge of a juror who allegedly saw Williams in handcuffs; and 10) move to dismiss the case on the basis of double jeopardy.

In addition to these ineffectiveness claims, Williams argued in his original petition that the grand jury was not comprised of his peers, that he was denied due process because this Court created a "prejudicial" atmosphere, and that the government "selectively" and "maliciously" prosecuted him. On December 31, 1997, Williams obtained leave from this Court to file an amendment to his habeas petition asserting that his trial lawyers were ineffective for failing to call as witnesses Jamie Key and his mother Mrs. Key and for failing to obtain the disciplinary reports of the three arresting officers who testified at trial. On July 7, 1998 and August 8, 1998, Williams filed two additional petitions that, with two exceptions, raised the same claims presented in his initial petition and the amendment thereto. In these petitions, Williams asserted for the first time that his counsel was ineffective for failing to call Leona Seay and Shavell

3

Martin as witnesses and for failing to argue that his conviction violated double jeopardy because the State of Illinois had previously charged him with a similar crime (claims 3 and 10 above, respectively).

## DISCUSSION

Collateral relief under 28 U.S.C. § 2255, the federal version of habeas corpus, is available only in limited circumstances. The statutes provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Such relief is therefore limited to "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)).

A motion under § 2255 is "neither a recapitulation of nor a substitute for a direct appeal." *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). The failure to raise an issue on direct appeal generally bars a defendant from raising it in a subsequent post-conviction proceeding. *Barker v. United States*, 7 F.3d 629, 632 (7th Cir. 1993), *cert. denied*, 510 U.S. 1099 (1994). Therefore, a petitioner cannot raise in his habeas petition non-constitutional issues that could have been but were not raised on direct appeal or rehash issues he raised on direct appeal, absent a showing of changed circumstance. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994).

The petitioner can, however, raise constitutional claims for the first time in a collateral attack if he "can demonstrate cause for the procedural default as well as actual prejudice from the failure to appeal." *Barker*, 7 F.3d at 632; *Velarde v. United States*, 972 F.2d 826, 827 (7th Cir. 1992).

In this case, Williams filed a direct appeal challenging the sufficiency of the evidence the government presented against him as well as the appropriateness of a "flight" instruction given to the jury. Although Williams failed to raise any of his ineffective assistance claims on direct appeal, he had the same counsel at trial and on appeal. Since the courts "do not usually expect lawyers to raise the issue of their own ineffectiveness at trial on appeal," *Barker*, 7 F.3d at 632, the fact that the same lawyer represented Williams at trial and on direct appeal constitutes sufficient cause to excuse Williams' failure to raise his claims of ineffective assistance on direct appeal. However, in his § 2255 petition, Williams for the first time raises three constitutional issues which he failed to raise at his trial or in his direct appeal to the Seventh Circuit. Specifically, Williams alleges in his habeas petition that the grand jury was not comprised of his peers, that this Court was biased against him, and that he was "selectively" and "maliciously" prosecuted by the government.

Upon careful inspection and review of the petitioner's briefs, we are unable to ascertain any argument by Williams that satisfies the cause and prejudice requirement which would permit him to further litigate his three defaulted constitutional claims. In Williams' reply to the government's brief, he attributes these defaults to his attorney's deficiencies. However, this is "just another way of saying that he wants to bring up . . . grounds not included in his direct appeal." *Norris v. United States*, 687 F.2d 899, 903 (7th Cir. 1982). We will not permit Williams to circumvent the cause and prejudice requirement and allow him to argue that the

5

grand jury was unconstitutionally constituted, that this Court was biased, and that he was "selectively" prosecuted merely because he used the talismanic phrase "ineffective assistance of counsel." He is required to present some evidence or argument concerning cause and prejudice, and he has simply failed to do so in this case. Accordingly, the three constitutional issues (i.e. the grand jury was not comprised of his peers, the Court was biased against him, and the government selectively prosecuted him) are procedurally barred from review.

Before turning to the merits of Williams' remaining claims, we pause to address the government's contention that this Court lacks jurisdiction to consider the two claims Williams raised for the first time in his July 24 and August 10, 1998 petitions, namely that his attorneys were ineffective for failing to call Leona Seay and Shavell Martin as witnesses and for failing to move to dismiss the case on the basis of double jeopardy. The government argues that these last two petitions are "successive" within the meaning of § 2255 and cannot be addressed by this Court until the Seventh Circuit certifies them for consideration. *See Nunez v. United States*, 96 F.3d 990, 991 (7th Cir. 1996). We disagree.

Although Williams did not obtain leave from this Court to file his last two motions, he nevertheless styled these motions as amendments to his original petition. Because of the liberal right to amend one's pleading embodied in the federal rules and the fact that Williams is proceeding *pro se*, this Court will treat these motions as amendments to the original petition. The government has had adequate notice of these claims and has addressed them in its response. Moreover, the additional claims in his amended § 2255 papers only supplement the pre-existing issues of ineffective assistance of counsel. Accordingly, we find that the issues included in the

amendments are not "successive" petitions, and the issues which are presented therein will be decided on the merits.

**Ineffective Assistance of Counsel**

Most claims for ineffective assistance of trial counsel can be properly raised for the first time in a § 2255 petition. *United States v. Taglia*, 922 F.2d 413, 418 (7th Cir. 1989). When trial counsel served also as appellate counsel, the raising of an ineffective assistance claim for the first time in a § 2255 motion is logical. To prove ineffective assistance, Williams must establish that his attorney's performance fell below an objective standard of reasonableness (the "performance prong") and that his counsel's deficiencies prejudiced his defense (the "prejudice prong"). *Strickland v. Washington*, 466 U.S. 668, 688-92, 104 S.Ct. 2052 (1984). The performance prong requires Williams to specifically identify acts or omissions that form the basis of his claim of ineffective assistance. *Id.* at 690. Based on the totality of the circumstances, the Court must then determine whether the identified acts and omissions fall outside the range of professionally competent assistance. *Id.* Courts must begin this analysis with a strong presumption that counsel rendered reasonably effective assistance. *United States v. Morales*, 964 F.2d 677, 683 (7th Cir.), *cert. denied*, 506 U.S. 903 (1992).

The prejudice prong requires Williams to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 695. This requires Williams to show more than just a different outcome. He must show that his trial counsel's errors are so serious as to render his trial fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 368-69, 113 S.Ct. 838 (1993); *Mason v. Godinez*, 47 F.3d 852, 855 (7th Cir. 1993). Failure to satisfy either the

7

performance prong or prejudice prong of the *Strickland* test is fatal to an ineffectiveness claim. *See Chichakly v. United States*, 926 F.2d 624, 630 (7th Cir. 1991). Because the object of an ineffectiveness claim is not to grade the performance of counsel, the Court can dispose of an ineffectiveness claim solely on the ground of lack of prejudice if that is the more efficient course. *Strickland*, 466 U.S. at 697.

1. Subject Matter Jurisdiction

Williams claims that his trial lawyers were ineffective for stipulating that the gun he possessed traveled in interstate commerce because the government could not have proven that the gun he allegedly possessed "substantially affected interstate commerce." (Jan. 28, 1997 Pet. at 5a.) In making this claim, Williams admits that the gun he allegedly possessed was manufactured outside of Illinois and that a licensed gun dealer brought the gun into Illinois. (*Id.*; Aug. 10, 1998 Am. Pet. at ¶ 18.) This is sufficient to satisfy the interstate element of § 922(g)(1) because "[a] single journey across state lines, however remote from the defendant's possession, is enough to establish the constitutionally minimal tie of a given weapon to interstate commerce." *United States v. Lewis*, 100 F.3d 49, 52 (7th Cir. 1996). Because Williams acknowledges that the gun he allegedly possessed traveled in interstate commerce, the decision of his trial counsel to stipulate to this fact was proper. Accordingly, Williams cannot establish that his trial counsel's performance fell below an objective standard of reasonableness.

Even if Williams could satisfy the performance prong, there is no evidence that the stipulation prejudiced his defense. The government has attached to its response an ATF form which shows that a company located in Newport, New Hampshire manufactured the gun Williams possessed. (Gov't Response Ex. D.) Therefore, the gun had to move in interstate

commerce to arrive in Illinois from New Hampshire. Under 18 U.S.C. § 922(g)(1), "proof of a gun's manufacture outside of the state in which it was allegedly possessed is sufficient to support the factual finding that the firearm traveled in or affected commerce." *United States v. Lowe*, 860 F.2d 1370, 1374 (7th Cir. 1988). Since the government had ample evidence to satisfy the interstate element of § 922(g)(1), Williams cannot establish that there is a reasonable probability that the result of the proceedings would have been different had his attorneys not entered into the stipulation. Accordingly, this claim is not a proper basis for habeas relief.

    2.    <u>Failure To Call Witnesses For Whom Williams Submits No Affidavits</u>

Williams' second contention is that his trial attorneys were deficient for failing to call eight witnesses to the stand to testify on his behalf. As an initial matter, it is axiomatic that the "lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review." *United States v. Williams*, 106 F.3d 1362, 1366 (7th Cir. 1997). Additionally, "conclusory allegations do not satisfy *Strickland's* prejudice component." *United States v. Asubonteng*, 895 F.2d 424, 429 (7th Cir. 1990). To show prejudice at his trial, Williams must somehow rebut the testimony of three police officers who testified that they saw him throw his gun during his attempt to flee arrest. Since no affidavits have been provided by the petitioner from the following witnesses, this Court is left to speculate as to the potential substance of their testimony. Nevertheless, we will review each of the witnesses Williams mentions in his papers to determine if there is any merit to his argument.

    a.    Two Additional Police Officers

Williams contends that he overheard two Chicago police officers, namely Officers Buck and Boyd, engaged in a verbal disagreement with Officer Watts, who is the individual Williams

9

alleges framed him for this crime. Williams further alleges that he heard either Buck or Boyd state, "we don't want nothin' to do with this kind of shit." Because of these statements, Williams claims that his counsel's failure to call Buck and Boyd to testify at his trial resulted in substantial prejudice. In response to these allegations, this Court appointed an attorney to investigate the claim of police officer misconduct. Personnel files were subpoenaed and viewed in camera. After the investigation, we concluded there was nothing in the personnel files which bore on the credibility of the officers' testimony in this case. Moreover, assuming Buck and Boyd did make the statement Williams has attributed to them, the statement was not clearly made in reference to Williams' arrest. It is quite possible, indeed it is likely, that the statement was concerning an unrelated manner. As a result, since Williams has not provided an affidavit from either of these officers, he has failed to make a sufficient showing for a habeas corpus petition. Accordingly, Williams has not demonstrated prejudice from his attorneys' failure to call these officers to testify.

  b. Garage Owner

Williams also claims that defense counsel were unconstitutionally ineffective for failing to call an unnamed garage owner who "watched the chase to a certain extent" and who supposedly heard the police say "all we want is drugs." (Jan. 28, 1997 Pet. at 5.) Williams apparently believes this individual would have corroborated his version of events. However, we believe that defense counsel's decision to not call this witness cannot be deemed constitutionally infirm because, as conceded by Williams in his brief, his attorneys did contact this garage owner. After interviewing him, counsel determined that it would not be wise to call him because she believed he would be a hostile witness. From our standpoint, this decision was a reasonable

strategic choice that is largely immune from judicial scrutiny. *See Williams*, 106 F.3d at 1366. As such, this Court finds counsel's conduct fell comfortably within the range of professionally competent assistance.

    c.    Jamie Key and His Mother

Two witness, Jamie Key and his mother, Mrs. Key, were also not called to testify. Williams apparently believes that both of these individuals would have stated that Williams was not carrying a gun prior to his arrest. We find this argument wholly unpersuasive because Williams has not provided from either of these individuals an affidavit which eliminates the possibility that Williams obtained possession of the weapon after he last saw Jamie Key and his mother but before the encounter with the police. Accordingly, we conclude that it was not unreasonable for Williams' counsel to have decided not to have these witnesses testify.

    d.    Fingerprint Expert

Williams alleges prejudice because his trial counsel did not have a "fingerprints expert" testify that no attempt was made by the police to remove his prints from the gun. However, the fact that Williams' fingerprints were not lifted was fully explored during defense counsel's cross-examination of one of the police officers who testified during the government's case-in-chief. In fact, the officer conceded on the stand that no attempt was made to determine if Williams' fingerprints existed anywhere on the gun recovered in the empty lot. Consequently, this Court is at a loss as to what a fingerprint expert could have added to Williams' defense. Because the issue was fully addressed during cross-examination, then there cannot be prejudice to the defendant through his attorneys' decision not to call a fingerprint expert.

11

3. <u>Failure To Call Two Witnesses For Whom Williams Does Submit Affidavits</u>

Williams presents two affidavits in support of his claims. Neither affidavit is sufficient to create a possibility of a different outcome at trial. In one of these affidavits, Shavell Martin states that the petitioner was not in possession of a gun when arrested and that Williams did not attempt to flee arrest. This statement contradicts a fact stipulated by the defendant in his brief - namely that Williams admitted that he fled when approached by the police. Again, we cannot find prejudice to the petitioner in this case. Had Martin been called to testify about the information in his affidavit, he would have been impeached during cross-examination by the government about his claims that Williams did not flee the police. This impeachment would render unreliable the testimony about possession of a weapon.

Leona Seay's affidavit is also insufficient to establish prejudice. In Seay's affidavit, she states that Williams was not carrying a gun in her apartment on the night of the offense. Taken as true, this statement does not mean that Williams was not in possession of the revolver later that evening. Further, Seay was arrested with Williams on the night he was charged with attempted murder and other violent crimes in September of 1990. If called to testify by defense counsel, she would have been cross-examined on this point, and the facts of Williams' attempted murder charge may have come out in his federal trial. Given this, it may have been ineffective assistance of counsel had defense counsel allowed Seay to testify.

Therefore, it is clear that Williams' petition fails to show that his attorneys' performance fell below an objective standard of reasonableness when they chose not to call these two witnesses.

### 4. Failure To Call Williams To Testify On His Own Behalf

Williams alleges that his representation at trial was deficient because he was prohibited by counsel from testifying in his own defense at trial. "The decision not to place the defendant on the stand is a classic example of what might be considered sound trial strategy." *United States v. Norwood*, 798 F.2d 1094, 1100 (7th Cir. 1986). In taking the stand, Williams could have opened the door to serious character impeachment, including the use of his four prior felony convictions.

Williams further contends that his waiver of the right to testify was done involuntarily and without knowledge of his rights. We disagree. This Court explicitly informed Williams in open court of his right to testify following the end of the defendant's case-in-chief and before the jury was instructed. We asked Williams whether he wanted to testify, whether he understood his right to testify, and whether he had discussed the issue with his lawyers. Williams responded that "it's to the prosecutor to prove their case" - which we conclude is further evidence of his knowing and voluntary waiver of his right to testify - and that he wished to remain silent. Accordingly, it is clear that collateral relief is unavailable to the petitioner on this ground.

### 5. Allowing the ATF Agent To Be Present During Other Testimony

Williams asserts that his attorneys were ineffective for calling the ATF case agent to the stand to show inconsistencies between the arresting officers' testimony. Williams also complains that his attorneys should have objected to the case agent sitting at counsel's table. As to the first issue, again this argument must fail because we will not intrude upon the reasonable strategic trial decisions of Williams' attorneys. As for the second issue, Federal Rule of Evidence 615 allows "an officer of the federal government designated as a representative of the

13

government" to testify after hearing other witnesses testimony. *See also United States v. Berry*, 133 F.3d 1020, 1024 (7th Cir. 1998) (citing Fed.R.Evid. 615). Therefore, we find that counsel was not constitutionally ineffective in this regard.

    6.    <u>Failure To Obtain and Review Discovery Material</u>

Williams alleges that his attorneys failed to procure discovery material from the government. Williams however does not claim that the government resisted full discovery, rather he faults his attorneys for failing to obtain all evidentiary material from the government. To the contrary, Williams' counsel submitted several pre-trial discovery motions which resulted in the government producing a wide range of relevant material to the defense. Williams also contends that his counsel were ineffective for failing to request the disciplinary reports of the arresting officers. However, this argument is factually unsupportable because Williams' lawyers did request all such information in a formal motion. As stated previously, this Court appointed an attorney to investigate the underlying claim of police misconduct. After the investigation, we concluded that nothing in these personnel files would bear materially on the outcome of this case.

Williams also suggests that procurement of some exhibits would have provided exculpatory evidence. For example, Williams argues that photographs of the crime scene should have been requested by the defense well before trial. However, the petitioner fails to explain what exculpatory value the photographs supposedly would have provided. Absent such a proffer, Williams' claim of ineffective assistance fails.

    7.    <u>Failure To Investigate the Scene of Arrest Diligently</u>

Williams asserts several deficiencies in the investigative abilities of his trial counsel which prevented him from presenting a strong case at trial. Williams states that an investigator

14

should have checked the wattage of the street lights in order to establish that the lighting was so dim that the police officers could not have seen him throw the gun. Alternatively, Williams claims that his attorneys negligently failed to call the power company to determine if the street lights were operating on the evening of his arrest. However, three of the officers each testified that he saw the defendant throw the gun away in the empty field. This Court does not deem the possibility of proof of dim lighting as likely to overcome the testimony of these officers. Accordingly, the petitioner cannot demonstrate prejudice from the perceived lack of counsel's investigative diligence.

Next, Williams claims that his attorneys were incompetent for failing to insure the weapon was tested to determine if it was operable. However, the ATF ballistics report establishes that the weapon was tested and found to be operable. Thus, the specific failures which Williams raises did not prejudice his case. Therefore, Williams' claim that his counsel were ineffective for failing to investigate the crime scene must fail.

    8.    <u>Failure To Contest Prior Convictions As Unconstitutional</u>

Williams alleges that his counsel were ineffective at trial for failing to contest his prior felony convictions which formed the basis of his "career offender" status under 18 U.S.C. § 922(g)(1). Williams argues that, if the convictions had been challenged as unconstitutional, he would not have been convicted as a "career offender." Williams has conceded that he pled guilty to these prior felonies, and he offers no plausible explanation as to why they are now unconstitutional. As a result, we find that the performance of his counsel in not challenging the constitutionality of his prior convictions did not fall below an objective standard of reasonableness.

15

### 9. Juror Who Saw Williams in Handcuffs

Williams next claim is that he was denied due process because a juror supposedly saw him in handcuffs. This argument fails because Williams' counsel actually raised this issue with the Court at the appropriate time during the trial. An inquiry was conducted by the Court which resulted in our conclusion that the juror probably did not see Williams in handcuffs. Further, the United States Marshal who escorted the petitioner testified that, to the best of his knowledge, "[the juror] did not see [Williams] in handcuffs." Nevertheless, the Court next asked Williams' lawyers if they wanted to have the juror removed and an alternate impaneled. Defense counsel declined. Williams' lawyers made the strategic decision to keep the juror on the panel. We find no due process violation.

### 10. Failure To Allege Double Jeopardy

Finally, Williams states that his attorneys should have argued that the federal prosecution of his crime was unconstitutional since he had been previously charged with the same crime in state court. Specifically, Williams argues that his lawyers were ineffective for not moving to dismiss the federal felon-in-possession charge based on the argument that the State of Illinois previously charged him with a similar gun possession crime. The record in this case indicates that an arrest for unlawful use of a weapon was nolle prossed by the state in November, 1990. Consequently, because the state weapons charge was nolle prossed before jeopardy ever attached in that case, there was no legitimate double jeopardy argument for Williams' counsel to have made that would not have been deemed frivolous. Therefore, Williams' claim that his counsel was ineffective for failing to raise a double jeopardy objection fails.

## CONCLUSION

For the foregoing reasons, Roscoe Williams' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is denied. This is a final and appealable order. This case is terminated.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: February 12, 2002